UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ELLIOT DORSCH, et al.,

    Plaintiffs,

v.                              CASE NO. 8:11-CV-441-T-17MAP

PILATUS AIRCRAFT, LTD.,
etc., et al.,

    Defendants.

_____/

ORDER

This cause is before the Court on:

    Dkt. 1    Notice of Removal
    Dkt. 26  Motion For Remand
    Dkt. 30  Joint Response in Opposition
    Dkt. 31  Motion for Leave to File Reply
    Dkt. 32  Opposition

Plaintiffs have moved for the remand of this case. Defendants oppose the request for remand to state court.

The Complaint in this wrongful death case includes the following:

    Count I -    Pilatus Aircraft Ltd. - Negligence
    Count II -   Pilatus Aircraft Ltd. - Strict Liability
    Count III -  Honeywell - Negligence
    Count IV -  Honeywell - Strict Liability
    Count V -   Epps Aviation - Negligence
    Count VI -  Leading Edge Aviation Services, Inc. - Negligence

Count I is premised on negligent design and manufacture of the Subject Aircraft by Defendant Pilatus. Count II is premised on defective and unreasonably dangerous design, manufacture and assembly of the Subject Aircraft by Defendant Pilatus. Count III is premised on the defective and unreasonably dangerous design, manufacture and assembly of the Instrument System by Defendant Honeywell. Count IV is premised on the defective and unreasonably dangerous design, manufacture and assembly of the Instrument System by Defendant Honeywell. Count V is premised on the negligent breach of Defendant Epps Aviation's duty to inspect, test, maintain, repair, and modify the Subject Aircraft, its engine and related systems. Count VI is premised on the negligent breach of Defendant Leading Edge's duty to inspect, test, maintain, repair and modify the Subject Aircraft, its engine and related systems.

This case was removed from Hillsborough County Circuit Court on March 2, 2011. The basis of jurisdiction is diversity. In the Notice of Removal, Defendants allege that Defendant Leading Edge Aviation Services, Inc. ("Leading Edge") was improperly joined, and the presence of Leading Edge, a Florida corporation, does not destroy complete diversity (Dkt. 1). Defendants allege that there is no reasonable basis for Leading Edge's liability to Plaintiffs under controlling state law. Legg v. Wyeth, 428 F.3d 1317, 1324-25 & n. 5 (11th Cir. 2005). Defendants allege the only contact Defendant Leading Edge had with the aircraft was the replacement of its battery on May 30, 2008, more than a year before the crash of July 5, 2009. (Dkt. 1-4, Exh. 3). In the Notice of Removal, Defendants rely on the affidavits of Mike LaConto, Mark Moberg and Gregory Allen attached to the Notice of Removal (Dkts. 1-3, 1-4, 1-5). In the Response to Motion to Remand, Defendants also provide the affidavit of Andrew Fuller, who removed the battery, tested the battery and reinstalled the battery in June, 2009.

Defendants contend that Florida law applies to the claim against Leading Edge because: a) Leading Edge is a Florida company that services aircraft in Tampa, FL; b)

Case No. 8:11-CV-441-T-17MAP

Leading Edge performed its servicing of the aircraft, replacement of the aircraft's battery, in Tampa, FL; and c) the aircraft's home base was Tampa, FL.

Under Florida law, a plaintiff must plead and prove four elements to prevail on a product-related negligence claim: 1) a legal duty on the part of the defendant under the given circumstances to protect the party seeking relief; 2) breach of that duty by the defendant; 3) injury to the party seeking relief as a proximate result; and 4) damages.

I. Background

This case arises from the crash of a small plane in which Plaintiffs' mother and father were passengers on July 5, 2009. The aircraft departed from Teterboro, New Jersey, en route to Tampa, Florida. (Dkt. 2, p. 3). Plaintiffs allege that the aircraft's Instrument System, comprised of two Primary Flight Displays and two Multi Function Displays, failed during the flight by shutting off, and therefore did not provide accurate data to safely operate the Subject Aircraft, which crashed, killing all on board.

II. Standard of Review

A. Remand

A defendant may remove to federal court any civil case filed in state court if the case could have been brought originally in federal Court. See 28 U.S.C. Sec. 1441(a). Diversity jurisdiction is an adequate ground for removal, but diversity jurisdiction only exists when there is complete diversity among the parties. Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998). As the party seeking federal jurisdiction, the defendant bears the burden of establishing diversity jurisdiction. Williams v. Best Buy Co., 269 F.3d 1316, 1319 (11th Cir. 2003). Because removal is a statutory right, it is "construed strictly in favor of state court jurisdiction.". University of

3

Case No. 8:11-CV-441-T-17MAP

Southern Alabama v. American Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999). Any uncertainty as to jurisdiction should be resolved in favor of remand. Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994).

B. Fraudulent Joinder

Where a defendant is fraudulently joined, the citizenship of defendant is not considered in determining whether complete diversity exists. Russell Petroleum Corp. v. Environ Prods., Inc., 333 F.Supp.2d 1228, 1231 (M.D. Ala. 2004). The Court must dismiss the non-diverse defendant and deny any motion to remand the matter to state court. Henderson v. Washington Nat. Ins. Co., 454 F.3d 1278, 1281 (11th Cir. 2006).

In Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998), the Eleventh Circuit states:

> Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity. Joinder has been deemed fraudulent in two situations. The first is when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant. Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir.1983), superceded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc., 991 F.2d 1533 (11th Cir.1993). The second is when there is outright fraud in the plaintiff's pleading of jurisdictional facts. Coker, 709 F.2d at 1440. In Tapscott, 77 F.3d at 1355 (11th Cir.1996), a third situation of fraudulent joinder was identified-i.e., where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant. Id. at 1360.

In Legg v. Wyeth, 428 F.3d 1317, 1324-25 & n.5 (11th Cir. 2005), the Eleventh Circuit Court of Appeals explains that the potential for legal liability must reasonable, not merely theoretical.

4

Case No. 8:11-CV-441-T-17MAP

The procedure to resolve a claim for fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed.R.Civ.P. 56(c). The Court first determines whether Defendants have met the heavy burden of proving by clear and convincing evidence that the resident defendant was fraudulently joined. If Defendants satisfy this initial burden, the burden shifts to Plaintiff to establish that genuine issues of fact or law exist concerning the appropriateness of the non-diverse defendant's joinder. The Court views all factual allegations in the light most favorable to the plaintiff. The Court should base its determination of joinder on the plaintiff's pleadings, supplemented by any affidavits, deposition transcripts or other summary-judgment type evidence submitted by the parties at the time of removal. When considering a motion to remand in a fraudulent joinder case, the Court must not weigh the merits of a plaintiff's case beyond determining whether there is an arguable one under state law. The plaintiff need not show that he could survive a motion for summary judgment; after drawing all reasonable inferences from the record in the plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff, there need only be a reasonable basis for predicting that the state law might impose liability on the facts involved.
Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997). The Court resolves factual controversies in favor of the plaintiff "only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. Legg v. Wyeth, 428 F.3d at 1323 (finding no question of fact where plaintiffs failed to submit evidence to dispute sworn statement by defendant). Where a defendant's sworn statements are undisputed by the plaintiff, the Court may not "resolve the facts in the [p]laintiff['s] favor solely on the unsupported allegations in the [plaintiff['s] complaint." Id. In the absence of any proof, the Court will not "assume that the nonmoving party could or would prove the necessary facts." Id.

II. Motion for Remand

Plaintiffs have moved for remand and attorney's fees for improvident removal

5

Case No. 8:11-CV-441-T-17MAP

under 28 U.S.C. Sec. 1447(c).

Plaintiffs argue that the supporting affidavits on which Defendants rely do not meet the requirements for an offer of expert testimony under Rule 702, and are deficient because the affidavits are not based on personal knowledge. Plaintiffs argue that Defendants have not met the heavy evidentiary burden of offering "clear and convincing evidence" demonstrating that Plaintiffs have no possibility of recovering against Defendant Leading Edge.

Plaintiffs offer an affidavit from Plaintiffs' aviation accident reconstruction and aircraft maintenance expert, Donald E. Sommer, P.E., to rebut Defendants' assertion that there is no possibility that Leading Edge could be found liable in this action. (Dkt. 26-1, Sommer Affidavit, Exhibit A).

Defendants oppose Plaintiffs' Motion for Remand. Defendants argue that Defendant Leading Edge Aviation Services, Inc. did nothing more than replace an old battery with a new one, which was done on May 30, 2008: a) 14 months and two annual inspections (by others) before the accident; and b) one inspection required removal and reinstallation of the battery only one month before the accident. Defendants argue that there is no reasonable basis to claim that mere installation, alone, in these circumstances, could be responsible for the accident. In other words, the non-diverse Defendant, Leading Edge Aviation Services, Inc., had only one contact with the Subject Aircraft—a battery installation. Defendant Epps Aviation performed an annual inspection in June, 2009, in which the battery was removed for performance of a "Capacity Test" and then re-installed. Defendants argue that Defendant Leading Edge did not maintain or service the Subject Aircraft, and Defendant's single act of installing a battery could not have contributed to the accident, where Defendant Epps Aviation subsequently removed, tested and reinstalled the battery. After two inspections, the battery was found to be completely operational.

6

Case No. 8:11-CV-441-T-17MAP

A. Notice of Removal, Attached Affidavits

Defendants attached the Affidavit of Mike LaConto in support of the Notice of Removal. Mike LaConto is the Avionics Manager for Epps Air Service, Inc. d/b/a Epps Aviation. Mike LaConto states that he is personally familiar with the Subject Aircraft, and is familiar with the Subject Aircraft's avionics and electrical systems. Mike LaConto further states that he is personally aware that Plaintiffs were and are citizens and residents of Florida and that Daniel Dorsch and Cynthia Dorsch were residents and citizens of Florida on July 5, 2009. The Virginia State Police Report, which states that the victims carried Florida driver's licenses, is attached to the Affidavit, along with copies of licenses from the NTSB file.

Defendants also attached the Affidavit of Mark R. Moberg, President of Leading Edge Aviation Services, Inc. In the Affidavit, Mark Moberg states that Leading Edge replaced the battery in the Aircraft on May 30, 2008. Mark Moberg further states that, other than replacing the battery, Leading Edge performed no other maintenance or service on, nor did it perform any inspection of, the Subject Aircraft, either before or since.

Defendants attached the Affidavit of Gregory T. Allen, Pilatus Maintenance Manager for Epps Air Service Inc. d/b/a Epps Aviation. Gregory T. Allen states that he reviewed Aircraft's Log, containing the record dated May 30, 2008, concerning the removal and replacement of the master battery on the Aircraft. Gregory T. Allen states that on June 23, 2008, Epps Aviation conducted an annual inspection of the battery installed by Leading Edge, and determined that the battery was serviceable and airworthy. Gregory T. Allen further states that on June 22, 2009, Epps Aviation conducted another annual inspection on the Aircraft, and against complied with the one-year inspection requirement for the battery. Epps Aviation determined that the battery was serviceable and airworthy.

Case No. 8:11-CV-441-T-17MAP

Defendants attached the Affidavit of Andrew Fuller to Defendant's Response. Andrew Fuller is the Pilatus Maintenance Crew Chief for Epps Air Service, Inc. d/b/a Epps Aviation. In June, 2009, Andrew Fuller removed the battery installed by Leading Edge, performed the required Capacity Test, fully charged the battery as required by the Concorde Manual and standard procedures, and reinstalled the battery in the Subject Aircraft.

B. Sommer Affidavit

In the Affidavit, Donald E. Sommer, P.E. states that he is familiar with the Subject Aircraft's avionics and electrical Systems. "The Subject Aircraft's standard electrical system is comprised of 1 GEN1 Starter/Generator Unit 28 VDC 300 Amps; 1 GEN2 Back-up Alternator Unit 28 VDC, 115 Amps; and 1 Lead Acid Battery 24 VDC, 40 Amp hours. I am familiar with how these components interact electrically and with the subject aircraft's electrical buses and avionics components, including the instrument system, to which they supply power." (Dkt. 26-1. P. 9, par. 20).

In his Affidavit, Donald E. Sommer, P.E., states that Plaintiffs' claims against Defendants are based in part on the loss of electrical power to the Subject Aircraft's Instrument System. "Implicated in this loss of power are, necessarily, a defect in the Subject Aircraft's design or manufacture, a defendant in the Instrument Panel's design or manufacture, and/or a breach of duty in connection with the provision of maintenance, repair and/or testing services supplied by Epps Aviation and Leading Edge. A loss of power such as the loss experienced during the subject flight could have resulted from the failure of the Subject Aircraft's generators, as described above, by a failure of the Subject Aircraft's master battery, or by a failure of the electrical connections supplying electrical power to the Instrument System that went blank during the accident sequence. " (Dkt. 26-1, pp. 10-11, par. 24).

8

Case No. 8:11-CV-441-T-17MAP

Donald E. Sommer, P.E., further states:

"The failure of the Instrument System like the failure experienced just prior to the subject accident would not necessarily result from a *total* loss of power, as Messrs. Laconto, Moberg and Allen suggest. Rather surges, variances in voltage or intermittence in the supply of electrical power to the Instrument System could have caused the Instrument System to go blank. Such surges, variances or intermittence in the supply of power to the Subject Aircraft, moreover, could have resulted from a defective design or manufacture of the Subject Aircraft itself, from the defective design or manufacture of the Instrument System itself, or from the supply of power and/or installation of a defective battery, or by negligent maintenance, servicing or testing of the Subject Aircraft, including testing and/or inspection of its electrical system and electrical connections and components. (Dkt. 26-1, pp. 11-12, par. 25).

Donald E. Sommer, P.E. further states:

In my experience as an aircraft accident reconstruction and aviation maintenance expert, I have encountered several incidents in which surges, variances and/or intermittence in electrical power have caused the shutdown or failure of avionics equipment. Such instances have resulted from faulty maintenance and installation as well as from faulty design or manufacture. A power surge, variance, or intermittent power supply could be caused by improperly secured electrical connections that become loose over time. It is therefore possible that the loss of the instrument panel during the subject flight could have resulted from negligent maintenance and/or servicing of the subject aircraft, including performing work on its battery and other portions of the subject aircraft's electrical system and connections. (Dkt. 26-1, p. 12, par. 26).

Donald E. Sommer, P.E. disputes the assertions of LaConto and Allen that the failure of the battery could not have contributed to the subject accident because the Subject Aircraft is equipped with generators that operated during flight and that it is possible to turn the master battery off during flight:

These assertions are based on the assumption that all portions of the Subject Aircraft's electrical system—the generators, battery and all

9

Case No. 8:11-CV-441-T-17MAP

> electrical connections and components—were functioning properly during the accident sequence. As discussed above, the fact that the Instrument Panel went black during the accident sequence belies this assumption. As stated, the Instrument System's failure could have resulted from surging, variance, intermittence or less rated voltage delivery....(Dkt. 26-1, pp. 12-13, par. 27).

Donald E. Sommer, P.E. disputes the assertions of LaConto, Allen and Moberg that the fact that the brief garbled radio communications between the Subject Aircraft and ATC in the seconds after Mr. Dorsch's panel went dead demonstrate that the Subject Aircraft had a properly operating electrical system:

> This argument fails to account for the possibility of electrical surges, intermittency and voltage variances addressed above and fails to account for the substantial difference between the power required to operate the Instrument System and that required to transmit radio communications. The existence of a few radio and transponder transmissions immediately following the loss of the Instrument System are therefore not inconsistent with a contention that the subject accident was caused in part by a surge, variance, or intermittent supply of electricity to the Instrument System, with the catastrophic consequences that followed. (Dkt. 26-1, p. 13, par. 28).

In the opinion of Donald E. Sommer, P.E., Plaintiffs' claims against Defendant Leading Edge are supported by his review of the available information regarding the subject accident:

> The loss of the instrument panel could have resulted from surges, variances, or intermittent power caused by, among other contributing factors, a defective battery, installation, or deficient maintenance on the aircraft's electrical system. Accordingly, even based on the extremely limited information available at this time, there exists a good faith basis for Plaintiffs to continue to seek relief against Leading Edge. I was consulted by Plaintiffs' counsel prior to the filing of the subject Complaint and I identified those parties I thought would be appropriate defendants—including Leading Edge. Of course, if discovery and further inspections and testing suggests that there is no reasonable basis to continue with any particular claim against any particular Defendant, I will

Case No. 8:11-CV-441-T-17MAP

> advise Plaintiffs' counsel and am certain that appropriate steps will be taken to remedy the situation. However, at this stage and with the risk that a statute of limitations might forever preclude the assertion of certain claims (I was advised that Florida has a two-year statute of limitations for wrongful death) it would not have been prudent not to have sued Leading Edge based on the information known at this time.
> (Dkt. 26-1, p. 14, par. 29).

C. Defendants' Response

Defendants argue that Plaintiffs' allege, and the Sommer Affidavit states, that the subject accident was caused by design or manufacturing defects in the Subject Aircraft or its components. Defendants argue that the Affidavits of Moberg, Allen and LaConto establish that Defendant Leading Edge did not design or manufacture the Subject Aircraft or its components. Defendants argue that these statements have not been controverted by Plaintiffs and should be taken as true.

Defendants further argue that Plaintiffs allege, and Sommer contends, that poor maintenance of the Instrument Panel could have led to the accident. Defendants argue that the Affidavits of Moberg, Allen and LaConto establish that Leading Edge did no maintenance work of any kind on the Instrument Panel. Defendants suggest that Plaintiffs possess the Subject Aircraft's maintenance records and could provide contradictory evidence if these statements were inaccurate. Defendants argue that Plaintiffs have not controverted the Affidavits as to this issue, and the uncontroverted statements by Defendants should be taken as true.

Defendants further argue that Plaintiffs allege, and Sommer contends, that a defective battery could have contributed to the accident. Defendants argue that Defendants have submitted uncontroverted affidavits that Leading Edge did not manufacture or design the battery. Defendants argue that if Plaintiffs believed that a

11

defective battery contributed to the cause of the accident, Plaintiffs could have sued the manufacturer of the battery, Concorde Battery Corporation.

Defendants argue that Sommer contends that a faulty installation of the battery could have contributed to the accident. Defendants argue that it is uncontroverted that the battery was removed by the FAA-certified servicer prior to the accident, found to be airworthy, and re-installed in the aircraft only after having passed the required Capacity Test for which it was removed. Defendants argue that it is uncontroverted that the installation of the battery at the time of the accident was not performed by Defendant Leading Edge.

D. Discussion

The Court has reviewed the pleadings and affidavits. The Court expects that the same maintenance records were available to Plaintiffs and Defendants.

After consideration, the Court finds that there is no reasonable basis in fact to include Defendant Leading Edge Aviation, Inc. as a defendant. It is uncontroverted that Leading Edge did not manufacture or design the battery. Defendants produced evidence that Leading Edge installed the Concorde battery on May 30, 2008. Plaintiffs have not controverted the Moberg Affidavit that Leading Edge performed no other services on the Subject Aircraft. Defendants produced evidence that Andrew Fuller, of Epps Aviation, removed, tested and reinstalled the battery in June, 2009. Assuming that the Leading Edge battery installation in 2008 was somehow defective, the Epps Aviation removal and reinstallation of the battery in June, 2009 renders it unreasonable that the Leading Edge installation could have in some way caused the accident.

The Court concludes that Defendant Leading Edge should be dismissed without prejudice and the Motion to Remand should be denied. Accordingly, it is

Case No. 8:11-CV-441-T-17MAP

**ORDERED** that the Motion to Remand (Dkt. 26) is **denied**. The Motion for Leave to File Reply is **denied** as moot. Defendant Leading Edge Aviation, Inc. is dismissed without prejudice as a defendant in this case.

**DONE AND ORDERED** in Chambers, in Tampa, Florida on this 10th day of November, 2011.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies to:
All parties and counsel of record